a

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

| | |
|---|---|
| COSEA BELL #318282,<br>Plaintiff | CIVIL DOCKET NO. 1:22-CV-01128<br>SEC P |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| STATE PRISON OFFICIALS ET AL,<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

---

## REPORT AND RECOMMENDATION

Before the Court is a civil rights Complaint and several Amended Complaints filed under 42 U.S.C. § 1983 by pro se Plaintiff Cosea Bell ("Bell").  Bell is incarcerated at the Raymond Laborde Correctional Center in Cottonport, Louisiana.  He names as Defendants: Heather Cormier, Spencer Launey, Johnathan Augustine, Sgt. Sarah Laurent, Merlin Young, Dana Davis, Renee' Holts, Mr. Veade, Mr. Rachele, Assistant Warden Wayne Millus, Kent Gremillion, Nikki Chenevert, Marcus Myers, and James LeBlanc.

Because Bell fails to state a claim for which relief can be granted, IT IS RECOMMENDED that his Complaint as amended (ECF Nos. 8, 16, 17, 20) be DENIED and DISMISSED WITH PREJUDICE.

## I. Background

Bell filed a Complaint (ECF No. 8) and three Amended Complaints (ECF No. 16, 17, 20), which consist of five separate and unrelated sets of facts and allegations. First, Bell asserts that he suffered an injury to his back in 2002, which requires him

1

to walk with a cane.  ECF No. 8 at 6.  Bell claims that he explained to Nurse Practitioner Heather Cormier his inability to walk long distances, push, pull, lift, carry, reach, handle, stoop, or crouch and his loss of focus and concentration due to pain.  He requested a cane and back brace, but Cormier denied his request.  She also denied a work restriction duty status for his physical impairment of low back pain. ECF No. 8 at 8.

Bell claims that he needs a cane "for the degenerative disc illness in my lower back, inflammation in joint and muscle spasms, to balance my walk because of dizziness from medications, joint stiffness, to control motion/movement of my neck and back."  ECF No. 8 at 8.  Bell asserts that this is proof that Cormier was deliberately indifferent to his serious medical needs resulting in a wanton infliction of pain.  ECF No. 8 at 7.  He further claims that Cormier "knows of and disregard an excessive risk to my health and safety" . . . and "refused to treat me, ignored my complaints, intentionally treated me incorrectly."  *Id.*

Bell alleges that Cormier also refused authorization for him to receive double meals portions for all three meals per day.  ECF No. 8 at 9.  She only ordered double portions at breakfast.  *Id.*  Thus, Bell claims Cormier disregarded his dietary needs. *Id.*

Next, Bell alleges a "pattern of neglect" by Dr. Spencer Launey, who's conduct is allegedly "motivated by evil intent, a willful and wanton act and demonstrates reckless, callous indifference to constitutional rights."  ECF No. 8 at 11.  Bell alleges

that Dr. Launey also failed to write a permanent duty status exempting him from work due to low back pain.  ECF No. 8 at 11.

Bell alleges that mental health practitioner Kaci Devillier ("Devillier") changed his dosage and brand of psychotropic medication, resulting in a disregard of excessive risk to his health and safety.  *Id* at 11-12.  He also complains that Devillier refused to give him a "no work" duty status and "failed to render services timely."  *Id.* at 13.

Bell asserts that mental health practitioner Johnathan Augustine ("Augustine") refused to treat his "diagnosed psychiatric illness" and "failed to render services timely."  ECF No. 8 at 16, 18.  He alleges that Augustine refused to give him certain medications he requested.  *Id.* at 15.  He claims that Augustine discontinued Bell's "sleep disorder medication" without consent and failed to write a "no work" duty status.  *Id.*  He also claims that Augustine's conduct is motivated by evil intent.  *Id.* at 16.

Bell alleges that he refused an assessment by Augustine "because it was going to be the same denial of proper treatment."  ECF No. 8 at 18.  Augustine then discontinued Bell's psychiatric medication.  *Id.*

Bell alleges that mental health counselor Dana Davis ("Davis") failed to render services timely.  *Id.* at 19.  He told her he cannot work in prison because he is not "in the right state of mind."  *Id.*  On one occasion, he asked to see a mental health practitioner, but Davis stated that Bell had to wait until his assessment date.  *Id.*  Bell asserts that Davis failed "to provide and assist around the clock on site psychiatrists" to respond to him in a reasonable manner.  *Id.* at 19.  When Bell finally

3

had an appointment with Davis, she gave him "insufficiently individualized attention" and argued with him about his diagnosis and treatment. *Id.* at 19-20.

Bell claims that Dr. Merlin Young, the mental health supervisor, retaliated against Bell for filing a grievance. *Id.* at 21.   Bell claims that Dr. Young "refused and rejected" Bell's complaints for treatment for mental illness. *Id.* at 22.

Bell asserts that Asst. Warden Millus and Chenevert are liable as supervisors over the medical department who failed to stop Cormier and Launey from violating Bell's rights.  ECF No. 8 at 23.

Bell alleges that Sgt. Sarah Laurent verbally assaulted him and used "minor force" by grabbing and pulling Bell's meal tray from his hand.  Bell claims the verbal assault caused embarrassment and mental disturbance. *Id.* at 22.

Bell alleges that Lt. Col. Renee' Holts and Asst. Warden Gremillion are liable for failing to remove Sgt. Laurent from the kitchen or punish her for her conduct. *Id.* at 23.

Bell claims that Warden Myers and James LeBlanc are liable for "participation personally" and failing to prevent staff from violating Bell's rights.  ECF No. 8 at 24.

Bell states that Lt. Col. Veade and Major Rachele are liable for finding him guilty of a disciplinary violation and imposing an excessive sentence.  ECF No. 8 at 25.

Bell asserts that due to the actions of Defendants, he suffered mental and emotional damages and personal injury.  ECF No. 8 at 25.

In the second, 45-page portion of the Complaint, Bell seeks damages for the alleged exposure to toxic smoke from a wildfire that was allegedly started "from an illegal meth operation" on property near RLCC.  ECF No. 8 at 28-31.  Bell alleges that Warden Myers failed to evacuate the inmates prior to the toxic smoke spreading to RLCC.  ECF No. 8 at 31.

Bell states that his allergies and asthma has worsened since the exposure.  *Id.*  Additionally, the smoke caused him to smell and taste smoke, develop nausea and headaches, and suffer from eye, skin, and throat irritation.  *Id.* at 32.  Bell alleges that he now has difficulty sleeping because he is afraid.

In the third portion of the Complaint, Bell complains that he experiences an invasion of privacy when officials deliver incoming mail without asking for a photo ID to prove identity or allow other inmates to see the name and address of the sender.  ECF No. 8 at 81.  Bell alleges that he is afraid he could become the victim of identity theft.  *Id.* at 82.

In an Amended Complaint (ECF No. 16), Bell complains of exposure to environmental tobacco smoke ("ETS").

In a subsequent Amended Complaint (ECF No. 17), Bell seeks damages for the denial of his administrative grievances by Diane Williams.

In a third Amended Complaint (ECF No. 20), Bell claims that his rights under the Americans with Disabilities Act have also been violated.

## II.    Law and Analysis

### A.    Bell's Complaint is subject to preliminary screening.

Bell is a prisoner seeking redress from an officer or employee of a governmental entity, so his Complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998) (per curiam).  That statute directs sua sponte dismissal of a complaint—or any portion thereof—if the Court finds it frivolous or malicious, if it fails to state a claim upon which relief can be granted, or if it seeks monetary relief against a defendant who is immune from such relief. *Id.*

A complaint is frivolous if it lacks an arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009).  The Fifth Circuit has held that a complaint lacks an arguable basis in fact when "the facts alleged are fantastic or delusional scenarios or the legal theory upon which a complaint relies is indisputably meritless." *Id.* (quoting *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) (internal quotation marks omitted)).  In other words, during the initial screening under § 1915A, a court may determine that a prisoner's complaint is frivolous if the facts alleged are clearly baseless, fanciful, fantastic, delusional, or otherwise rise to the level of the irrational or the wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992).

A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010)

(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010). This plausibility standard is not akin to a probability standard; rather, the plausibility standard requires more than the mere possibility that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556.

Although all well-pleaded facts are taken as true, the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 F. App'x 414 (5th Cir. 2012) (unpublished) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id*.

### B. <u>Bell fails to state a viable claim for the violation of his privacy.</u>

Bell alleges a violation of the Privacy Act by Warden Myers because officials hand out mail without confirming the identity of the recipient. ECF No. 8 at 81-82. He claims that this could result in him suffering from identity theft *Id*. The Privacy Act "is limited to actions against agencies of the federal government." *Dittman v.*

*California*, 191 F.3d 1020, 1026 (9th Cir. 1999); *Webber v. Fed. Bureau of Prisons*, 6:03-CV-079, 2005 WL 176122, at *8 (N.D. Tex. Jan. 27, 2005), *aff'd*, 200 F. App'x 335 (5th Cir. 2006).   Therefore, Bell fails to state a claim under the Privacy Act against state officials.

Additionally, Bell fails to state a claim under the Constitution.   Even the practice of opening a prisoner's incoming legal mail outside of his presence to inspect it for security purposes has been upheld as reasonable.   *See Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993); *Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993) (same); *Miller v. Johnson*, 6:20-CV-586, 2020 WL 8361989, at *3 (E.D. Tex. Dec. 16, 2020), *report and recommendation adopted sub nom. Miller v. Texas*, 2021 WL 289557 (E.D. Tex. Jan. 28, 2021).   The practices Bell complains of are far less invasive.   Thus, he also fails to state a constitutional claim.

Moreover, Bell seeks compensatory damages for mental and emotional injury. The Prison Litigation Reform Act provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).   Because Bell has suffered no physical injury as result of the mail distribution practices, he is barred from recovering the requested compensatory damages.   *See Herman v. Holiday*, 238 F.3d 660, 665–66 (5th Cir. 2001); *Mayfield v. Texas Dep't of Criminal Justice*, 529 F.3d 599, 605–06 (5th Cir. 2008); *Miller* 2020 WL 8361989, at *3.

C.   **Bell fails to state a viable claim for injury from smoke inhalation due to a wildfire.**

Bell alleges that there was "toxic smoke" from a "wide spread wild fire in the farm fields" at RLCC.  ECF No. 8 at 31.  Bell states that the fire was started "from an illegal meth operation" that caused a tire company to burn on property near RLCC. *Id.* Bell alleges that the inmates were evacuated after the smoke reached RLCC, but that Warden Myers should have evacuated them earlier.  *Id.*  Bell asserts that his allergies and asthma have worsened since the exposure, and he has suffered from nausea, headaches, and eye, skin, and throat irritation.  *Id.* at 32.  Bell claims that he also has difficulty sleeping because he is afraid.  *Id.*

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on prison officials to take reasonable measures to ensure the safety of inmates.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  The Supreme Court has held that prison officials only violate this duty when: (1) a sufficiently serious deprivation has occurred; and (2) the prison official acts with "deliberate indifference" to inmate health or safety.  *Id.* at 834.  The Supreme Court has equated "deliberate indifference" to criminal law recklessness, which requires a person charged with recklessness to have had actual knowledge of a risk of harm.  *Id.* at 836.  "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind."  *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).

The deliberate indifference standard is an "extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).  A prison official acts with

deliberate indifference "only if (1) he knows that inmates face a substantial risk of serious bodily harm, and (2) he disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. 825 at 847. Thus, even "the failure to alleviate a significant risk that [the official] should have perceived but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d 447, 459 (5th Cir. 2001); *Parks v. Deville*, 08-CV-1660, 2009 WL 792258, at *3 (W.D. La. Mar. 25, 2009).

Bell does not allege that Warden Myers knew that a fire was going to spread from a tire company to the fields of RLCC. Nor does he allege that the Warden failed to take reasonable measures to diminish the harm. Bell states that he was evacuated from RLCC and transferred to Allen Correctional Center for nine days "for safety until the toxic smoke and smell cleared out in RLCC." ECF No. 8 at 33. Bell alleges negligence, at best, which cannot support a constitutional claim.

### D.    Bell fails to state a viable medical care claim under the Eighth Amendment.

#### 1. Nurse Practitioner Cormier

Bell alleges that requested a cane, back brace, and "no work" duty status from Nurse Practitioner Cormier, which she denied. ECF No. 8 at 8. Bell asserts that this is proof that Cormier was deliberately indifferent to his serious medical needs resulting in a wanton infliction of pain. ECF No. 8 at 7. He further claims that

Cormier "knows of and disregard an excessive risk to my health and safety" . . . and "refused to treat me, ignored my complaints, intentionally treated me incorrectly." *Id.*

Bell also alleges that Cormier also refused authorization for him to receive double meals for all three meals per day.  ECF No. 8 at 9.  She only ordered double portions at breakfast.  *Id.*  Thus, Bell claims Cormier disregarded his dietary needs. *Id.*

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement.  *Palmer v. Johnson*, 193 F.3d 346, 351–52 (5th Cir. 1999) (internal quotation marks and citation omitted).  As noted above, a plaintiff must show an objective and sufficiently serious deprivation and that an official acted with deliberate indifference.  Similarly, to state an Eighth Amendment claim for inadequate medical care, a plaintiff must show an official acted with "deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).  Accordingly, whether one characterizes the treatment received as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the deliberate indifference standard.  *Wilson v. Seiter*, 501 U.S. 294, 303–04 (1991) (internal quotation marks and citations omitted); *Lewis v. Goodwin*, 810 F. App'x 332, 333 (5th Cir. 2020).

Bell was examined by Cormier on June 17, 2019, January 3, 2021, February 18, 2021, July 14, 2021, September 29, 2021, March 22, 2022, and an unspecified date

in June 2022.  ECF No. 20 at 3.  He was examined by nurses on other dates.  *Id.*
Additionally, in one of his amended complaints, he states that he received physical
therapy every two weeks.  ECF No. 16.  Bell also indicates that he was examined by
an eye doctor in July 2022.  *Id.*  He is evidently receiving some medical treatment for
his back and otherwise.  Bell clearly disagrees with Cormier's medical opinion and
course of treatment, but a disagreement with diagnosis and treatment is insufficient
to state a claim under § 1983.  *See Lewis*, 810 F. App'x at 333 (citing *Gobert v.
Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)); *Varnado v. Lynaugh*, 920 F.2d 320, 321
(5th Cir. 1991); *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

In fact, the United States Court of Appeal for the Fifth Circuit has recognized
that the failure to provide an inmate with a cane establishes a difference of medical
opinion rather than deliberate indifference.  *See Lewis*, 810 F. App'x at 333 (claim
that inmate was denied the use of a cane or walker in his cell did not show deliberate
indifference to his safety because the claims amounted to a disagreement with the
opinions of medical personnel and the treatment he received); *Johnson v. Talley*, 243
F. App'x 10, 2007 WL 1725463 (5th Cir. 2007) (failure to provide inmate with a cane,
knee brace, or walking stick for most of his stay at the Lynaugh Unit was a difference
of opinion or a malpractice claim and did not establish an Eighth Amendment
violation).

### 2.    Dr. Spencer Launey

Next, Bell alleges a "pattern of neglect" by Dr. Spencer Launey, who's conduct
is allegedly "motivated by evil intent, a willful and wanton act and demonstrates

reckless, callous indifference to constitutional rights." ECF No. 8 at 11. He asserts that Dr. Launey failed to write a permanent duty status exempting him from work due to low back pain. ECF No. 8 at 11.

In an Amended Complaint, Bell states that he requested a cane, back brace, and a "no-duty" status from Dr. Launey on September 29, 2021. ECF No. 20 at 4. However, Dr. Launey denied the requests.

As with Cormier, Bell does not allege that Dr. Launey was motivated by anything other than his medical judgment. And Bell has received treatment form Dr. Launey, Cormier, an eye doctor, and other providers. Bell clearly disagrees with Dr. Launey's medical opinion, but a disagreement with diagnosis and treatment is insufficient to state a claim under § 1983. *See Lewis*, 810 F. App'x at 333 (citing *Gobert*, 463 F.3d at 346); *Varnado*, 920 F.2d at 321; *Johnson*, 243 F. App'x at 10.

### 3. <u>Kaci Devillier</u>

Bell alleges that mental health practitioner Kaci Devillier ("Devillier") changed his dosage and brand of psychotropic medication, resulting in a disregard of excessive risk to his health and safety. ECF No. 8 at 11-12. He also complains that Devillier refused to give him a "no work" duty status and "failed to render services timely." *Id.* at 13.

Bell does not allege that Devillier was motivated by anything other than her medical judgment. Bell clearly disagrees with Devillier's medical opinion, but a disagreement with diagnosis and treatment is insufficient to state a claim under §

1983.  *See Lewis*, 810 F. App'x at 333; *Varnado*, 920 F.2d at 321; *Johnson*, 243 F. App'x at 10.

### 4.    <u>Johnathan Augustine</u>

Bell    asserts    that    mental    health    practitioner    Johnathan    Augustine ("Augustine") refused to treat his "diagnosed psychiatric illness" and "failed to render services timely."  ECF No. 8 at 16, 18.  He alleges that Augustine refused to give him certain medications he requested.  *Id.* at 15.  He claims that Augustine discontinued Bell's "sleep disorder medication" without consent and failed to write a "no work" duty status.  *Id.*

Bell alleges that Augustine's conduct is motivated by evil intent.  *Id.* at 16. However, this claim is entirely conclusory.  The district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.  *See Whatley v. Coffin*, 496 F. App'x 414 (5th Cir. 2012) (unpublished) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).  Moreover, Bell admits that his medication was discontinued after he refused an assessment by Augustine.  ECF No. 8 at 18.

Bell clearly disagrees with Augustine's medical opinion, but a disagreement with diagnosis and treatment is insufficient to state a claim under § 1983.  *See Lewis*, 810 F. App'x at 333; *Varnado*, 920 F.2d at 321; *Banuelos*, 41 F.3d at 235; *Johnson*, 243 F. App'x at 10.

5.   Dana Davis

Bell alleges that mental health counselor Dana Davis ("Davis") failed to render services and failed to give him a "no duty" status.  ECF No. 8 at 19.  He told her he cannot work in prison because he is not "in the right state of mind."  On one occasion, he asked to see a mental health practitioner, but Davis stated that Bell had to wait until his assessment date.  *Id.*  Bell asserts that Davis failed "to provide and assist around the clock on site psychiatrists" to respond to him in a reasonable manner.  *Id.* at 19.  When Bell finally had an appointment with Davis, she gave him "insufficiently individualized attention" and argued with him about his diagnosis and treatment. *Id.* at 19-20.

Again, Bell disagrees with the care rendered.  Davis has no duty to provide him with around-the-clock on-site psychiatric care, so the lack thereof does not establish deliberate indifference.  *See Grogan v. Kumar*, 873 F.3d 273, 278 (5th Cir. 2017).

E.   Bell fails to state a viable claim of retaliation.

Bell claims that Dr. Young "refused and rejected" Bell's complaints for treatment for mental illness.  ECF No. 8 at 22.  To state a valid § 1983 claim for retaliation, a prisoner must allege: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his exercise; (3) a retaliatory adverse act; and (4) causation.  *See Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998)).  An inmate must allege more than his personal belief that he is the victim of retaliation.  *See Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted).  "The

inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Jones*, 188 F.3d at 325 (citations omitted).

Bell claims that Dr. Young caused him to be denied mental health care in retaliation for filing a grievance in October 2021. ECF No. 20 at 5. However, Bell claims that he was denied that same treatment prior to filing a grievance. Moreover, he was treated by mental health counselor Davis on June 8, 2022, and by Cormier on March 22, 2022, and in June of 2022—all after his grievance was filed. *Id.* at 3. Therefore, Bell does not allege a chronology of events from which retaliation may plausibly be inferred.

**F.**    <u>**Bell fails to state a viable claim regarding his disciplinary convictions.**</u>

Bell alleges that Lt. Col. Veade and Major Rachele are liable for finding him guilty of a disciplinary violation and imposing an excessive sentence. ECF No. 8 at 25. Bell was convicted of aggravated work offenses on February 4, 2021, March 11, 2021, and November 17, 2021. ECF No. 20 at 6-7. As punishment, he was "held in isolation for 2 to 3 days" for the first two offenses. Additionally, he received seven days of room confinement and two days of extra duty work for the first offense. He received 14 days of room confinement and two days of extra duty work for the second offense. *Id.* Then, for the third offense, Bell was sentenced to 14 days loss of commissary privileges and 14 days room confinement. *Id.*

The Due Process Clause does not protect every change in the conditions of confinement having an adverse impact on the prisoner. *See Sandin v. Conner*, 515

U.S. 472, 478 (1995). Absent extraordinary circumstances, a plaintiff's placement in segregated confinement does not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest. *Id.* at 485–86. Since *Sandin*, the United States Court of Appeals for the Fifth Circuit has consistently held that "administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest." *See Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (citing *Pichardo v. Kinker*, 73 F.3d 612 (5th Cir. 1996)); *see also Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995). Likewise, the loss of prison privileges, such as telephone use, visitation, and commissary privileges as punishment "are in fact merely changes in the conditions of his confinement and do not implicate due process concerns." *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997).

Even if Bell was wrongfully convicted, his punishments of up to 14 days segregation and 14 days without commissary privileges are not such extraordinary circumstances that would be sufficient to state a constitutional claim.

G.    **Bell fails to state a viable claim against Sgt. Laurent for verbal abuse.**

Bell alleges that Sgt. Sarah Laurent verbally assaulted him and used "minor force" by grabbing and pulling Bell's meal tray from his hand. Bell claims the verbal assault caused embarrassment and mental disturbance. ECF No. 8 at 22. "[V]erbal threats, name calling, and threatening gestures by prison guards do not amount to a constitutional violation." *Reynolds v. Griffin, et al.*, 22-CV-1305, 2022 WL 17660964,

at *7 (E.D. La. Nov. 21, 2022) (quoting *Watson v. Winborn*, No. 02-10984, 67 F. App'x 241, 2003 WL 21108479, at *1 (5th Cir. Apr. 21, 2003)).

### H.    Bell fails to present a viable claim against the supervisory Defendants.

Bell asserts that Lt. Col. Renee' Holts, Asst. Warden Gremillion, Warden Myers, and James LeBlanc are liable for failing to prevent staff from violating Bell's rights.   ECF No. 8 at 24.   There is no respondeat superior liability under § 1983. *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996); *Field v. Corr. Corp. of Am. Inc.*, 364 F. App'x 927, 929 (5th Cir. 2010) (citation omitted); *Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008) (citing *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006)). Thus, each Defendant must act with deliberate indifference to Bell's serious medical needs.  Bell has failed to provide the requisite allegations.

### I.    Bell fails to state a claim regarding ETS.

Bell complains that he is subjected to ETS.  Exposure to ETS entitles an inmate to relief under the Eighth Amendment if a prisoner can establish that, objectively, he is "being exposed to unreasonably high levels of ETS"; and, subjectively, that prison authorities demonstrated a "deliberate indifference" to his plight.   *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

"[S]poradic and fleeting exposure" to ETS does not constitute "unreasonably high levels," even if it is "unwelcome and unpleasant" and causes discomfort, such as nausea and coughing. *See Richardson v. Spurlock*, 260 F.3d 495, 498 (5th Cir. 2001). Bell has not alleged that he is being exposed to "unreasonably high levels" of ETS. He received an eye examination and was prescribed artificial tears for discomfort.

ECF No. 16.  Bell does not state that he raised any further complaints or suffered any other issues after the eye appointment in July 2022.  He does not allege deliberate indifference by Defendants.

**J.    Bell cannot recover for the denial of administrative grievances.**

Bell alleges that his administrative grievances were wrongfully denied by Diane Williams.  ECF No. 16.  An inmate has no constitutional right to a grievance procedure and no due process liberty interest in having a grievance resolved to his satisfaction.  *See Geiger v. Jowers*, 404 F.3d 371, 374–75 (5th Cir. 2005).

**K.    Americans with Disabilities Act ("ADA")**

The ADA prohibits public entities from discriminating against disabled individuals.  *See Smith v. Harris Cnty.*, 956 F.3d 311, 317 (5th Cir. 2020).   To state a viable claim under the ADA, a plaintiff must allege: (1) that he is a qualified individual; (2) that he is being excluded from participation in - or being denied benefits of - services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is because of his disability.  *Id.* (citing *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004)).

"Nevertheless, the ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'"  *Samet v. Coleman*, 18-CV-2541, 2021 WL 1060240, at *7 (S.D. Tex. Mar. 19, 2021) (*Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012)).  The ADA is a discrimination statute.  The fact that a person has, or may have, a qualifying disability is not alone sufficient to state an ADA claim.

"Rather, the person with a disability must also establish causation, i.e., that he was discriminated against in the provision of benefits, services or programs by reason of his disability." *Id.*

Bell does not allege that any Defendant denied him treatment or services because of a disability. Bell alleges that he was examined on multiple occasions and no cane was prescribed. That other medical care providers may have reached a different medical judgment at earlier or later points in Bell's prison medical care does not constitute proof that Defendants discriminated against him by reason of any disability under the ADA. *Id.*

## III.  Conclusion

Because Bell fails to state a claim for which relief can be granted, IT IS RECOMMENDED that his § 1983 Complaint be DENIED and DISMISSED WITH PREJUDICE under §§ 1915 and 1915A.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and

Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Tuesday, January 24, 2023.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE